**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GAGANDEEP SINGH | : | Civil No. 1:26-CV-01969 |
| Petitioner, | : | |
| v. | : | |
| JOHN R. RIFE, *et al.*, | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

# MEMORANDUM

Before the court is a petition for writ of habeas corpus under 28 U.S.C. § 2241 filed by Petitioner Gagandeep Singh ("Singh"). (Doc. 1.) Singh argues that he is being wrongfully detained without a bond hearing under 8 U.S.C. § 1225(b) and, instead should be immediately released or given an appropriate bond hearing pursuant to 8 U.S.C. § 1226. For the reasons that follow, the court will grant Singh's petition and order his immediate release.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Singh is a native and citizen of India. (Doc. 6-3, p. 1.)[1] On July 16, 2023, Singh entered the United States near Lukeville, Arizona, without inspection, permission, or approval. (*Id.* at 2.) The next day, Singh was served with a notice to appear charging him as removable pursuant to the Immigration and Nationality Act

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

("INA") § 212(a)(6)(A)(i). (*Id.*; Doc. 6-2.) Singh was released into the United States. (Doc. 6-3, p. 2.)

On June 26, 2026, Singh was served with a warrant of arrest and taken into custody during his scheduled immigration check-in. (*Id.*) On June 30, 2026, Singh was transferred to Pike County Correctional Facility where he remains detained. (Doc. 6-4.) Singh has been scheduled for an immigration hearing on August 13, 2026. (Doc. 6, p. 7.)

On July 14, 2026, Singh filed a petition for writ of habeas corpus requesting release from detention against multiple government officials including the Warden of Pike County Correctional Facility ("Respondents").[2] (Doc. 1.) Respondents filed a response on July 31, 2026, and Singh filed a traverse on August 10, 2026. (Docs. 6, 7.) Thus, this petition is ripe for review.

## STANDARD OF REVIEW AND JURISDICTION[3]

Pursuant to 28 U.S.C. § 2241(c)(3), a district court may consider a writ of habeas corpus when an immigration detainee is "in custody in violation of the

---

[2] Respondents submit that the only proper respondent is Craig Lowe because he is the Warden of Pike County Correctional Facility. (Doc. 6, p. 21.) In this case, consistent with *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004), Petitioner has named the Warden as a respondent. *Padilla*, 542 U.S. at 447 ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent.") Because Petitioner has named a proper respondent, the court does not deem it necessary to determine whether the other named Respondents should be dismissed.

[3] Unlike prior habeas petitions before this court that presented similar issues, Respondents do not argue that the court lacks subject matter jurisdiction in this case, thus, the court will not address that issue here. (*See* Doc. 6.)

Constitution or laws or treaties of the United States." Claims related to an immigration detainee's request for release from confinement must be brought as a habeas petition as these "claims fall within the 'core' of the writ of habeas corpus." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 167 (2022)). Jurisdiction for "core habeas petitions . . . lies in only one district: the district of confinement." *Id.* (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (internal quotations omitted). Singh is detained at Pike County Correctional Facility, which is within the Middle District of Pennsylvania. *See* 28 U.S.C. § 118(b).

## DISCUSSION

Singh argues that he was improperly detained under Section 1225(b) of the INA, which relates to applicants for admission. (Docs. 1, 7.) Singh submits that he should have been detained, if at all, pursuant to 8 U.S.C. § 1226(a) and provided a bond hearing because he is not an applicant for admission. (Docs. 1, 7.) Singh requests the following forms of relief: an order that he not be transferred outside the district while his petition is pending; issuance of a writ of habeas corpus requiring Singh's release; alternatively, issuance of a writ of habeas corpus requiring a bond hearing; and an award of attorney's fees under the Equal Access to Justice Act ("EAJA"). (Doc. 1, p. 24–25.)

Respondents submit that Singh is detained pursuant to Section 1225(b)(2)(A). (Doc. 6, p. 2.) Respondents asserts that Singh falls within the statutory definition of "applicant for admission," he is properly detained under Section 1225(b)(2), and Section 1226(a) is inapplicable to him. (*Id.* at 19–50.) Respondents submit that the plain language of Section 1225(b)(2) requires detention of applicants for admission and that the section's reference to noncitizens "seeking admission" does not narrow the scope of Section 1225(b)(2). (*Id.* at 22–39.) Respondents further argue that its interpretation of Section 1225(b)(2)(A) does not make Section 1226(a)'s discretionary detention authority superfluous and *Jennings* does not undermine Respondents' interpretation. (*Id.* at 39–50.) Respondents also assert that Singh's temporary detention does not violate due process. (*Id.* at 50–54.) Alternatively, if the court wishes to grant Singh's petition, Respondents request that the court order a bond hearing rather than releasing Singh. (*Id.* at 54–55.)

Section 1225 of the INA is titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. It defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . ." *Id.* § 1225(a)(1). Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer

> determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

Noncitizens subject to this mandatory detention may only be released while their removal proceedings are pending "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288. The BIA recently decided *Matter of Yajure Hurtado*, 29 I. & N. Dec. 2016 (Sept. 5, 2025), wherein the BIA held that noncitizens who enter the United States without admission are subject to mandatory detention under Section 1225(b)(2)(A), and thus, immigration judges lack the authority to provide a bond hearing.

Conversely, 8 U.S.C. § 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
>
> (a) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (b) conditional parole; but
>
> (3) may not provide the alien with work authorization (including an 'employment authorized' endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

Singh is detained pursuant to Section 1225(b)(2)(A) and the parties do not allege that Singh is subject to Section 1226(c).[4] (*See* Docs. 1, 6, 7.)

The Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuit Courts of Appeals and federal district courts across the country and within this district have, overwhelmingly, rejected Respondents' position regarding the applicability of Section 1225(b)(2)(A) to detainees like Singh, a noncitizen who previously entered and had been living in the United States prior to his detention.[5] *See, e.g.*, *Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) (holding that petitioner's "detention is governed by Section 1226(a), not Section 1225(b)(2)(A)"); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026) (same); *Cirrus Rojas v. Olson*, No. 25-3127, ---F.4th----, 2026 WL 2198315 (7th Cir. July 30, 2026) (same); *Rodriguez Vazquez*, No. 25-6842, ---F.4th----, 2026 WL 2196424 (9th Cir. July 30, 2026) (same); *Santillan Quiroz v. Mullin*, No. 26-6019, 2026 WL 1876709 (10th Cir. June 30, 2026) (same); *Hernandez Alvarez v. Warden, Federal Detention Ctr. Miami*, 175 F. 4th 1258 (11th Cir. 2026) (same); *Hernandez v. Kunes*, No. 1:25-cv-1847, 2026 WL 411726 (M.D. Pa. Feb. 13, 2026) (Wilson, J.) (holding Section

---

[4] Section 1226(c) requires detention of noncitizens who are inadmissible or deportable because they have committed a criminal offense identified in this section. 8 U.S.C. § 1226(c).

[5] The court acknowledges that there are some district courts, as well as the Fifth and Eighth Circuit Courts of Appeals, who have agreed with Respondent's interpretation of Section 1225. (*See* Doc. 6, pp. 3–5.) *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). However, none of these decisions are binding on this court.

1225(b) was inapplicable to petitioner); *Santana-Rivas v. Warden of Clinton Cnty. Corr. Facility*, No. 3:25-cv-1896, 2025 WL 3513152 (M.D. Pa. Dec. 8, 2025) (Wilson, J.) (adopting report and recommendation finding that Section 1225 was inapplicable to petitioner); *Patel v. O'Neil*, No. 3:25-cv-2185, 2025 WL 3516865, at *4 n.7 (M.D. Pa. Dec. 8, 2025) (collecting cases within the Third Circuit as of December 8, 2025); *Quispe v. Rose*, 3:25-cv-2276, 2025 WL 3537279 (M.D. Pa. Dec. 10, 2025) (holding that petitioner was improperly detained under Section 1225(b)(2)(A)); *Patel v. O'Neill*, 3:25-cv-2289, 2026 WL 323121 (M.D. Pa. Feb. 6, 2026) (same). "The vast majority of courts confronting this precise issue have rejected the Government's interpretation, and the BIA's interpretation of *Hurtado*, as contradictory to the plain text of § 1225." *Demirel*, 2025 WL 3218243 (citing *Ayala Amaya v. Bondi*, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases)).

The court is persuaded by and agrees with the Second, Sixth, Seventh, Ninth, Tenth, and Eleventh Circuit Courts of Appeals and the majority of federal district courts that have ruled on this issue to date in rejecting Respondents' interpretation of Section 1225(b)(2)(A). Singh's detention under Section 1225(b)(2)(A) is unlawful because Section 1225(b)(2)(A) "applies only to noncitizens who are actively, *i.e.*, affirmatively, 'seeking admission' to the United States." *Bethancourt Soto v. Soto*, 807 F. Supp. 3d 397, 408 (D.N.J. 2025). Thus,

this section simply does not apply to someone like Singh, who has been residing in the United States for three years. *Id.* (collecting cases adopting the same conclusion).

In reaching this conclusion, the court holds that Respondents' interpretation of "seeking admission" violates the rule against surplusage and contradicts the plain meaning of the statutory text. *Bethancourt Soto*, 807 F. Supp. at 406 (finding that respondents' interpretation "violates the rule against surplusage and negates the plain meaning of the text."); *see also Patel*, 2025 WL 3516865, at *5 (citing *Centeno Ibarra v. Warden of Fed. Det. Ctr. Phila.*, No. 25-cv-6312, 2025 WL 3294726, at *5 (E.D. Pa. Nov. 25, 2025)) (same). If Section 1225(b)(2)(A) applied to every "applicant for admission," the phrase "seeking admission" would become unnecessary and surplusage.[6] *Bethancourt Soto*, 807 F. Supp. 3d at 406–07 (citations omitted); *see also United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023) (explaining that "every clause and word of a statute should have meaning" and "no clause, sentence, or word shall be superfluous,

[6] *Bethancourt Soto*, 807 F. Supp. 3d at 407, provides a helpful example of why Respondents' interpretation violates the rule against surplusage:

> [R]emoving the words "seeking admission" from § 1225(b)(2)(A) would not alter its meaning under Respondents' theory: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien ~~seeking admission~~ is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained[.]" That result is inconsistent with the principle that courts must interpret a statute to give meaning to "every clause and word" that Congress chose to include. *See* Polansky, 599 U.S. at 432, 143 S.Ct. 1720 (quotation marks omitted).

void, or insignificant"). Further, "seeking admission" connotes "some affirmative, present-tense action" such that it "requires an act currently underway not a static condition." *Id.* at *5 (citations omitted). Thus, Respondents' argument that Section 1225(b)(2)(A) does not require any "affirmative act" is contrary to the plain meaning of the words "seeking admission."[7]

Respondents' interpretation also makes Section 1226(c)'s mandatory detention provision superfluous and redundant. *Centeno Ibarra*, 2025 WL 3294726 at *6 ("Under the government's interpretation, § 1225 would require such mandatory detention regardless of criminal charges or convictions. If this was the case, Congress would have no need to create additional requirements for mandatory detention.").

In sum, Singh is not currently "seeking admission" to the United States. That was his status in July 2023. Therefore, Section 1225(b)(2)(A) does not apply to him as he is not currently "seeking admission" to the United States.

---

[7] Again, the examples provided by the court in *Bethancourt Soto*, 807 F. Supp. 3d at 406–07, are illustrative of why Respondents' argument fails:

> For example, one could deem every person in the country a "potential homebuyer," but they are not "seeking to buy a home," without taking some affirmative action towards that goal. Nor is every "employable adult" in the country "applying for a job," simply because jobs exist. Or, as Judge Ho explained in *Benitez*, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." *Benitez*, ––– F.Supp.3d at ––––, 2025 WL 2371588, at *7. Further, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' ... at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there." *Id.*

Addressing Singh's constitutional claims, it is undisputed that "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citations omitted). Thus, the court must determine what process is due to Singh, who is currently subject to mandatory detention without a bond hearing, by applying the balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Mathews* requires the court to weigh three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The first factor weighs heavily in Singh's favor because the "official action" has deprived him of his physical liberty. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests—the interest in being free from physical detention by one's own government."). The second factor similarly swings in Singh's favor because he "is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing." *Bethancourt Soto*, 807 F. Supp. 3d at 409 (emphasis in original). As to

the third factor, the court recognizes Respondents' interest in detaining noncitizens to ensure "the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690. Still, this factor weighs in favor of Singh because Respondents do not contend that he poses a danger to the community or that he is a flight risk. Accordingly, the *Mathews* factors weigh in Singh's favor and the court finds that his mandatory detention without a bond hearing under Section 1225(b)(2)(A) violates his procedural due process rights. *See Bethencourt Soto*, 2025 WL 2976572 at *8 ("Taken together, the Court finds that the *Mathews* factors weigh decisively in Petitioner's favor, and as such his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights.") (citations omitted); *Patel*, 2025 WL 3516865 at *6 (holding same). Thus, the court will grant Singh's petition and release him on his own recognizance as a government official did in July 2023.

Singh also requests costs and reasonable attorney's fees. (Doc. 1, p. 25.) Courts are permitted to entertain these requests as provided by the EAJA. Respondents request that the court defer any decision on EAJA fees until a motion is made by Singh and that the motion should not be entertained until final judgment is entered in this case. (Doc. 6, pp. 57–59.) The court will not make a determination of fees and costs here, but will permit Singh to file an appropriate

motion for costs and fees pursuant to the EAJA within thirty days of the entry of final judgment.

## CONCLUSION

For these reasons, the court will grant Singh's petition for writ of habeas corpus and order his immediate release. An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 17, 2026